IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

RALPH A.,

       **Plaintiff,**

v.                                        **Case No.: 5:24-cv-00710**

FRANK BISIGNANO,
**Commissioner of the**
**Social Security Administration,**

       **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration *(*hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Frank W. Volk, Chief United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are the parties' briefs seeking judgment on the pleadings. (ECF Nos. 7, 8).

The undersigned fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF No. 7); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF

No. 8); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, with prejudice, and removed from the docket of the Court.

## I.    Procedural History

In May 2021, Ralph A. ("Claimant") filed for DIB and SSI, alleging a disability onset date of July 31, 2019, due to "coronary artery disease, high blood pressure, diverticulitis, high cholesterol, and shortness of breath." (Tr. at 68, 289). After his applications were denied at the initial and reconsideration levels of review, Claimant requested an administrative hearing, which was held before the Honorable M. Drew Crislip, Administrative Law Judge (the "ALJ"). (Tr. at 105-123). By written decision dated August 8, 2023, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 65-87). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Claimant's request for review. (Tr. at 1-7).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed a Transcript of the Administrative Proceedings. (ECF No. 5). Claimant filed a Brief in Support of Complaint, requesting remand of the Commissioner's decision, and the Commissioner filed a Brief in Support of Defendant's Decision to which Claimant filed a reply. (ECF Nos. 7, 8, 11). Thus, the matter is ripe for resolution.

## II.    Claimant's Background

Claimant was 49 years old on the alleged onset date and 53 years old on the date of the ALJ's decision. (Tr. at 80). He communicates in English, has a limited education, and previously worked as a tree trimmer/truck driver/shredder. (Tr. at 80, 117, 288,

290).

### III. <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments

prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3)

maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2023. (Tr. at 70, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since July 31, 2019, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: coronary artery disease (CAD), chronic obstructive pulmonary disease (COPD), and borderline intellectual functioning. (*Id.*, Finding No.

3). The ALJ also considered Claimant's diagnoses of abdominal pain, nausea, diarrhea, clostridioides difficile infection (C. diff), hyperlipidemia, hypercalcemia, gastritis, colon polyps, headache, rectal bleeding, kidney stones, right knee pain, spongiotic dermatitis, dermatitis herpetiformis, hypertension, tick bite, acute bronchitis, upper respiratory infection, fatty liver, diverticulitis, colitis, acute viral hepatitis, low back pain, urinary tract infection, tinnitus, acute knee pain, hematochezia, allergic rhinitis, alcohol use, and hearing loss, but he found that the impairments were non-severe. (Tr. at 71).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 71-74, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can occasionally reach overhead. He can never crouch, crawl, or climb ladders, ropes, or scaffolds; he can occasionally stoop, kneel, balance (navigate uneven or slippery terrain), or climb ramps and stairs. He must avoid all exposure to extreme cold, extreme heat, vibration, noise above moderate, flashing/glaring/strobing lights (although typical office fluorescent lights are endurable without restriction), and unprotected heights; he can tolerate occasional exposure to weather, humidity, wetness, and pulmonary irritants. Additionally, he can perform only simple and detailed (noncomplex) work tasks in a work environment with no high production rate of fast pace. In addition to normal breaks, he will be off task 5 percent of time in an 8-hour workday.

(Tr. at 74-80, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform his past relevant work. (Tr. at 80, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 80-81, Findings 7 through 10). Considering the testimony of a vocational expert ("VE"), the ALJ determined that

6

Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a housekeeper/cleaner, deliverer, or marker. (Tr. at 80-81, Finding No. 10). Thus, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 81, Finding No. 11).

## IV.    Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ's decision must be remanded because the RFC assessment is inconsistent with the ALJ's finding that Claimant has a severe mental impairment, the ALJ failed to prove at step five of the sequential evaluation that Claimant could perform a significant number of jobs in the national economy, and the ALJ did not consider whether Claimant's frequent emergency room visits and hospitalizations prevented him from working on a regular and sustained basis for any continuous 12-month period. (ECF No. 7). In response, the Commissioner contends that the RFC finding reflects all of Claimant's credibly established mental limitations; the step five finding is supported by substantial evidence; and the ALJ appropriately considered Claimant's treatment records, including his emergency room visits. (ECF No. 8).

## V.    Relevant Evidence

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issues in dispute.

### A. *Treatment Records*

Claimant suffered a heart attack in October 2020 and was hospitalized for several days. (Tr. at 390, 398). He frequented the emergency department more than 15 times over the subsequent year, primarily due to chest pain. *See* (ECF Nos. 7 at 16, 8 at 5) (citing Tr. 393-396, 420-423, 539-543, 1248-1251, 1423-1430, 1439-1449, 1456-1464,

1472-1499, 1520-1523, 1539-1550, 1552-1560, 1561-1573, 1575-1586, 1628-1640, 1642-1652). Claimant was admitted for in-patient treatment for a total of nine days during that period. (ECF Nos. 7 at 16, 8 at 5) (Tr. 390-415, 417-30, 1242-57, 1515-37). He also received treatment in the emergency department "for low blood pressure and weakness (Tr. 1501-1513); diarrhea (1589-1599); an adverse medication reaction (Tr. 1601-1605); and kidney stones (Tr. 1613-1625) on an additional 4 occasions." (ECF No. 7 at 16).

### B. Evaluations, Prior Administrative Findings, and Opinions

On October 25, 2021, Rosemary L. Smith, Psy.D., assessed based upon her application of the psychiatric review technique that Claimant had mild limitations in all of the paragraph B criteria, and his borderline intellectual functioning was a non-severe impairment. (Tr. at 129-130, 137-138). At the reconsideration level of review, on July 12, 2022, Stephen Saxby, Ph.D., found that Claimant had moderate limitations understanding, remembering, and applying information and concentrating, persisting, and maintaining pace. (Tr. at 150, 162). Dr. Saxby agreed that Claimant had mild limitations in the other paragraph B criteria, and his borderline intellectual functioning was a non-severe impairment. (Tr. at 149-150, 161-162).

### C. Claimant's Testimony

Claimant testified during his administrative hearing that he stopped working in 2019 due to a stomach issue and then a massive heart attack. (Tr. at 113-114). He suffered from chest pain and breathing issues since his heart attack. (Tr. at 114).

## VI.    Standard of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States

Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  **Discussion**

### A. *Mental RFC*

Claimant argues that the ALJ's RFC assessment is inconsistent with the step two finding that Claimant has a severe mental impairment. (ECF No. 7 at 4). Specifically, Claimant contends that a severe mental impairment limits a claimant's ability to perform basic work activities, but the ALJ erroneously failed to include any such limitations in his RFC assessment. (*Id.*); (ECF No. 11 at 2). Claimant highlights the ALJ's step two finding that he is moderately limited in understanding, remembering, and applying information. (ECF No. 7 at 4). According to Claimant, given that finding, the ALJ should have assessed RFC restrictions to account for his limited ability to

understand, carry out, and remember even simple instructions, much less detailed instructions. (*Id*. at 8).

SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id*.

According to SSR 96-8p, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 404.1545(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's

functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4.

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

As discussed, the ALJ applies a special technique to evaluate mental impairments, which includes rating the severity of functional limitations in the "paragraph B" categories of (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself. The ALJ uses a five-point scale, ranging from no, mild, moderate, marked, and extreme limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(a)-(e). A finding of "no limitation" reflects that the claimant is able to function in the category "independently, appropriately, effectively, and on a sustained basis;" mild limitation means the claimant's ability to do so is "slightly limited;" moderate

limitation means the claimant's ability to do so is "fair;" marked limitation means the claimant's ability to do so is "seriously limited;" and "extreme limitation" means the claimant cannot function in that category area independently, appropriately, effectively, and on a sustained basis at all. *Id*. at § 12.00F(2)(a) through (e).

In this case, the ALJ performed the special technique, concluding that Claimant was moderately limited in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, and he was otherwise mildly limited. (Tr. at 73-74). In the RFC assessment, the ALJ articulated his consideration of the evidence concerning Claimant's mental RFC and thoroughly explained his findings regarding Claimant's mental functional abilities. In particular, the ALJ noted that he was persuaded by the testimony of clinical psychologist Mary E. Buban, Psy.D. (Tr. at 79). Dr. Buban testified at Claimant's administrative hearing regarding Claimant's mental impairments based upon her analysis of Claimant's records, including his clinical treatment and consultative examinations. (Tr. at 110). She opined that Claimant had moderately limited ability to understand, remember, and apply information and concentrate, persist, and maintain pace, as well as mild limitations in the other paragraph B criteria. (*Id*.). As most relevant here, Dr. Buban testified that, despite those limitations, Claimant could perform simple detailed work involving no complex tasks at a normal work pace with no fast-paced production quotas or time standards. (*Id*.).

The ALJ's RFC findings directly reflect Dr. Buban's expert opinion, which the ALJ found persuasive based on the totality of the record. The ALJ's analysis of the evidence is very thoroughly documented in the decision. The Court has previously considered the exact same challenge, arguing that, if an ALJ finds a claimant's mental impairments to be severe at step two, the ALJ is bound to include functional limitations in the RFC

finding to account for those impairments. *Miller v. Colvin*, No. 2:13-CV-31251, 2015 WL 917772, at *16 (S.D.W. Va. Mar. 3, 2015). As the Court previously explained, to the extent Claimant suggests that a finding of a severe mental impairment at step two necessarily requires limitations on a claimant's ability to perform basic work activities, that argument has no merit. *Id*. Like *Miller*, the ALJ's assessment herein demonstrated that "whatever symptoms Claimant displayed with regard to his BIF, the record did not support a determination that they caused more than a minimal impact on Claimant's ability to do work-related activities." *Id*.

The undersigned can easily decipher the basis for the ALJ's mental RFC finding, and there is very clearly more than a scintilla of evidence to support it. Thus, the undersigned **FINDS** that the mental RFC assessment is supported by substantial evidence.

### B. Step Five Finding

Claimant next argues that the ALJ failed to satisfy his step five burden of proving that Claimant could perform a significant number of jobs in the national economy. (ECF No. 7 at 9). At the fifth and final step of the sequential evaluation, the ALJ must determine if the claimant is capable of performing work that exists in sufficient numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). In doing so, the ALJ "will take administrative notice of reliable job information available from various governmental and other publications," including the DOT. *Id*. §§ 404.1566(d)(1), 416.966(d)(1). The ALJ may also rely upon vocational experts to determine if a claimant is capable of performing work that exists in significant numbers in the national economy. *Id*. §§ 404.1566(e), 416.966(e).

In order for a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993); *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). SSR 00-4p requires an ALJ to "inquire, on the record" whether a vocational expert's testimony conflicts with the DOT. 2000 WL 1898704, at *2. In addition, "[w]hen there is an apparent unresolved conflict between [vocational expert] … evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict." *Id.* Ultimately, SSR 00-4p requires an ALJ to "resolve" any such conflict "before relying on the [vocational expert] … evidence to support a determination or decision about whether the claimant is disabled." *Id.*

Claimant notes that the first job that the ALJ determined he could perform was a housekeeping cleaner, DOT 323.687-014. (*Id.* at 10). The Dictionary of Occupational Titles defines the job as requiring occasional crouching, yet Claimant's RFC was restricted to never crouching. (*Id.*); *compare* Cleaner, Housekeeping, DOT 323.687-014, *available at* 1991 WL 672783 ("Crouching: Occasionally - Exists up to 1/3 of the time"); *with* (Tr. at 74) ("I find that the claimant has the residual functional capacity to […] never crouch."). Claimant argues that the ALJ was obligated to resolve the apparent conflict before concluding that Claimant could perform the job of housekeeping cleaner. The Commissioner does not dispute that there was an unresolved apparent conflict between the VE's testimony and DOT concerning the housekeeping cleaner job. (ECF No. 8).

However, it would be harmless error if the ALJ found even one job that exists in substantial numbers that Claimant could perform. *Adrian H. v. Kijakazi*, No. CV 23-406-CDA, 2023 WL 8091517, at *3 (D. Md. Nov. 21, 2023) ("The ALJ need only identify

14

a single job within the claimant's capacity that exists in significant numbers in the national economy at step five.") (markings and citation omitted). Thus, the Court must consider the other two jobs that the ALJ relied upon at step five to determine if the ALJ's decision is supported by substantial evidence.

The ALJ found that Claimant could also work as a price marker, DOT 209.587-034. Claimant maintains that the position does not exist in significant numbers in the national economy because bar codes are now universally used instead of employees wielding pricing guns. (ECF No. 7 at 12). Claimant only cites one case from this circuit in support of his contention that the position of price marker is obsolete. (ECF No. 7 at 12). However, Claimant neglects to mention that the district court in that case explicitly stated that its observation that the job was obsolete was *not* a basis for remand, and the remark was mentioned only in a footnote. *Applefeld v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-17-517, 2018 WL 1136571, at *5 n.1 (D. Md. Mar. 1, 2018). Conversely, as the Commissioner cited, this Court and other district courts within the Fourth Circuit, have recently and routinely affirmed decisions in which the ALJs concluded at step five that claimants could perform the job of marker, DOT 209.587-034. (ECF No. 8 at 16-17) (collecting cases). The ALJ in this case was entitled to rely on the VE's testimony that a person with Claimant's characteristics and RFC could work as a marker for which there were approximately 100,000 positions nationally. (Tr. at 120).

Furthermore, the ALJ found that Claimant could perform an additional job, which satisfies the step five burden. The ALJ concluded that Claimant could work as a deliverer, DOT 230.663-010, for which there were approximately 100,000 jobs nationwide. (Tr. at 81). Claimant argues that the ALJ did not make any finding that the 100,000 jobs were considered a "significant number" of jobs under the law. (ECF No. 7

at 13). As an initial matter, the ALJ did not specify that the step five finding was based on the total 700,000 national jobs for all three occupations, as Claimant seems to suggest. (Tr. at 81). Further, to the extent that the ALJ did not clarify that the single job of deliverer, DOT 230.663-010, exists in significant numbers in the national economy, Claimant fails to assert any basis for remand. Far lower numbers of positions have been held to constitute significant numbers of jobs at step five, such as 50,000 laundry worker jobs, 70,000 floor waxer jobs, or even 10,000 jobs nationally. *Ronnie K. v. O'Malley*, No. 1:23CV324, 2024 WL 3695205, at *8 (M.D.N.C. Aug. 7, 2024); *Marco R. M. v. Kijakazi*, No. 2:21-CV-38, 2022 WL 257840, at *8 (E.D. Va. Jan. 10, 2022), *report and recommendation adopted,* 2022 WL 256501 (E.D. Va. Jan. 26, 2022). There is simply no question that 100,000 jobs carries the Commissioner's burden at step five of the sequential evaluation.

The undersigned thus **FINDS** that the ALJ's step five finding is supported by substantial evidence.

### C. Absenteeism

Claimant next argues that the ALJ failed to explain how he can work on a regular and sustained basis despite his frequent emergency room (hereinafter "ER") visits and hospitalizations for cardiovascular and pulmonary impairments. (ECF No. 7 at 16). He notes that between October 2020 and 2021, alone, he was in the ER 19 times and hospitalized for nine days. (ECF No. 7 at 16). Claimant contends that the treatment would have resulted in absenteeism in excess of the one day per month tolerated by employers, per the testimony of the VE. (*Id.* at 15, 16).

In response to this challenge, the Commissioner provides *post hoc* rationale that, although Claimant frequently visited the ER, he was often discharged without being

admitted to inpatient care, and he was typically discharged within one or two days when he was admitted. (ECF No. 8 at 18). In addition, the Commissioner points out that there were no medical opinions or prior administrative findings, stating that Claimant would require any absences from work beyond what a typical employer would allow. (*Id*. at 18-19). Yet, the ALJ never provided any of that analysis in the decision, and it is mere speculation to assume his reasoning regarding absenteeism.

The ALJ's own summary of the evidence demonstrates how important it was for the ALJ to discuss whether Claimant's medical treatment impacted his ability to work. Claimant alleged disability beginning on July 31, 2019. The ALJ noted that Claimant was in the ER on September 22, 2019, due to chest pain; was admitted to the hospital October 29 to 31, 2020, after suffering a heart attack and requiring defibrillation twice; returned to the ER a week after discharge for chest pain; again admitted to the hospital from November 15 to 17, 2020, due to chest pain; in the ER on December 4, 2020 due to shortness of breath; in the ER on December 23, 2020, due to shortness of breath and other symptoms; in the hospital on December 26, 2020, due to chest pain, shortness of breath, and other symptoms; in the ER on December 31, 2020, with hypertension issues; treated at the hospital January 13 to 14, 2021, due to chest pain and shortness of breath; returned the next month for exacerbation of COPD; participated in cardiac rehabilitation between March 15 and July 12, 2021 with only a break of a few weeks; in the ER on January 22, 2022; hospitalized from February 19 to 22, 2022, due to chest pain; in the ER on June 20, 2022; hospitalized from October 30 to 31, 2022; in the ER on February 7, 2023; admitted to the hospital from February 8 to 10, 2023; and in the ER on March 12, 2023. (Tr. at 76-78). As the ALJ cited, Claimant had numerous follow-

up visits and scheduled appointments between the foregoing hospitalizations and emergency treatment.

Despite the plethora of evidence that the ALJ cited regarding Claimant's frequent ER visits, hospitalizations, and other medical treatment, the ALJ did not include any analysis regarding whether it impacted Claimant's ability to work. Clearly, this substantial record warranted discussion of absenteeism, particularly in light of the VE's testimony that anything more than one absence per month was work-preclusive. The ALJ may have performed this analysis, but he did not articulate his reasoning or findings. Therefore, there is nothing for the Court to meaningfully review in this regard.

In a recent case, the Fourth Circuit reversed and remanded a decision in which "a magistrate judge and the district court decided that substantial evidence supported the ALJ's (unstated) conclusion that an absenteeism limitation was not warranted." *Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903, at *1 (4th Cir. Apr. 14, 2023) (unpublished). Although there are factual differences in *Dennis*, the same reasoning applies in this case. Despite evidence in the administrative record supporting that Claimant might miss work for medical treatment, the ALJ did not discuss how the frequency of medical treatment would impact absenteeism or reconcile it with the VE's testimony regarding the maximum number of absences allowed. This was error because the Court can only guess why the ALJ failed to address the obvious implications of Claimant's frequent medical treatment. *Id.* at *5.

Given the lack of discussion, the decision must be remanded for the ALJ to make a finding on absenteeism. *Dennis*, No. 21-2078, 2023 WL 2945903, at *1; *see also Daisy H. v. O'Malley*, No. 322CV00688DJNSLS, 2024 WL 393273, at *6 (E.D. Va. Jan. 12, 2024), *report and recommendation adopted sub nom. Hill v. O'Malley,* 2024 WL

388384 (E.D. Va. Jan. 31, 2024) ("Specifically, in the absence of any explanation as to how the ALJ considered evidence regarding absenteeism, the Court cannot find substantial evidence supporting the RFC determination, which contains no limitation relating to absenteeism. Certainly, the ALJ might have found that Plaintiff did not credibly establish that she would miss work to the extent that it would preclude substantial gainful activity. But the ALJ did not articulate those findings or explain why he excluded any limitation relating to absenteeism from the RFC. The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ failed to do so here. Given the lack of explanation, it is impossible to discern – without improperly speculating and inserting *post hoc* rationale for the ALJ – whether the ALJ sufficiently considered absenteeism or tardiness as a potential limitation to Plaintiff's ability to work. *See Newman v. Bowen*, No. 88-2209, 1989 WL 106816, at *2 (4th Cir. 1989) [...] The Court further finds this error does not constitute harmless error when considered alongside the VE's testimony that anything more than one absence or tardiness per month would preclude employment. For VE testimony to be relevant or helpful, it must be based on consideration of all the evidence and in response to proper hypotheticals from the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006).").

## VIII.  <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 7), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the

Commissioner, (ECF No. 8); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

 The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Chief Judge Volk, and Magistrate Judge Reeder.

 The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

 **FILED: October 10, 2025**



Joseph K. Reeder
United States Magistrate Judge